JOHN PARSONS *vs.* LUTHER D. PETTINGELL & others.

Under Gen. Sts. *c.* 24, § 5, one fireward has no more authority, acting alone, than any other person, to direct the destruction of a house to prevent the spreading of a conflagration, although it may be impossible for the other firewards, or the other officers named in the statute, to get to the place where the occasion for action upon the subject arises.

If, for the purpose of staying a conflagration, a building has been blown up without right, the jury in estimating the damages should consider the circumstances under which the building and its contents were situated, and their chance of being saved, even though the same were not actually on fire; and should determine their value with reference to the peril to which they were exposed.

TORT in the nature of trespass *quare clausum fregit*, to recover damages for the destruction of the plaintiff's dwelling-house and furniture.

At the trial in the superior court, before *Wilkinson*, J., it appeared that on the morning of the 18th of February 1864, a great fire broke out in Gloucester, commencing on Front Street, and extending destroyed a great many buildings and a large amount of property; that the dwelling-house of the plaintiff was situated on said Front Street, and that in the progress of the fire the defendants applied to and exploded in said house a quantity of gunpowder, to demolish or remove the same. The defendant Pettingell was a fireward of the town of Gloucester and chief engineer of its fire department. The other defendant merely acted under the directions of said Pettingell.

Evidence was introduced on the part of the plaintiff tending to show that he heard the alarm of fire at about four o'clock in the morning; that he immediately commenced making preparations to remove his household goods, and was engaged in taking the same from his house, when, at about six o'clock, as he thought, he was notified that his house was to be blown up; that he thereupon left it, and soon afterwards the gunpowder was applied and exploded in his house; that the defendants thereby interrupted the plaintiff in removing his goods from his house, and destroyed the house and goods.

The defendants admitted that they exploded powder in the plaintiff's house, and that the fire commenced at the time and

place stated; and they put in evidence tending to prove that the fire spread, with a high wind, rapidly towards his house, burning up the buildings on both sides of the street on which it stood, and around and beyond it, and the plaintiff's among the rest; that in the progress of the fire and in order to stay the same in that direction, somewhere between seven and eight o'clock, and when the plaintiff's house was already thoroughly on fire, they removed or attempted to remove it by an explosion of gunpowder therein; that at the time this was done the said house was thoroughly on fire to such an extent that its destruction, together with its contents, from that cause had, in effect, already taken place; and that the fire did not stop there, but burned up buildings on all sides of it and all beyond it for a long distance.

The defendants also introduced evidence tending to show that there were seven firewards engaged at different points of the burning district; that the fire covered an area of nearly twenty-five acres in extent; that with the exception of one other fireward there was no other fireward or other civil officer in the immediate neighborhood of the plaintiff's house at the time when the defendant Pettingell ordered the powder to be applied; and that there was no time or opportunity for Pettingell to consult any other fireward or other officer.

The plaintiff introduced evidence, by way of rebuttal, tending to show that his house was not on fire at the time powder was applied by the defendants.

The defendants asked the judge to instruct the jury as follows :

" 1. That if the plaintiff's house was not on fire, and Pettingell had no opportunity to meet and consult two other firewards or any of the other officers mentioned in the statute, he had the right, acting officially, if he deemed it advisable or necessary, to destroy it, and his honest judgment and decision in such case would be final.

" 2. That if the destruction of the plaintiff's house by fire whether said house was at the time on fire or not, was inevitable, the defendant Pettingell, acting officially, had the right

if he deemed it necessary, to demolish the house, and his de-cision in such case would be final.

" 3. That if the plaintiff's house was materially on fire, and Pettingell, acting officially, thought it necessary or advisable and decided to demolish it, his decision in such case would be final.

" 4. That if the plaintiff's house was materially on fire, and Pettingell, acting officially, decided to destroy it, he had a right so to do, and in such case he would be entitled to be guided by his own judgment. Even if he erred in judgment and did not effectually destroy the building, or even made matters worse, still, if honestly done in the discharge of his official duty, he would not be responsible for damages, even if in so doing he interrupted the plaintiff in saving his more bulky and heavy movable property.

" 5. That the defendants are liable for the destruction of such personal property of the plaintiff, if any, as might have been saved if they had not interfered, and for no more."

But the judge refused so to rule, and instructed the jury that, " inasmuch as the act of the defendants in blowing up the plaintiff's house was without his consent, and not directed by any three firewards or by any of the other persons named in Gen. Sts. *c.* 24, § 5, it was wrongful, and the plaintiff is en-titled to such damages as he has sustained therefrom. If the fire had not reached the plaintiff's house at the time when it was destroyed by the defendants, so that it was not and had not been on fire, then the plaintiff is entitled to recover the value of the house and furniture in it, after deducting the amount of insurance received by the plaintiff on account of their loss. The fact that they were in imminent peril of de-struction by fire would not diminish the damages to which the plaintiff was entitled. If the plaintiff's house at the time it was blown up was so far on fire as to render its destruction in-evitable, or in other words if the fire upon the house had made such progress in its destruction as to render its extinguishment impossible, then to all practical purposes it had become of no value. It may be said to have been then destroyed, and the

defendants' act was not injurious to the plaintiff, and he can recover no damages therefor. If the fire had caused some injury to the house of the plaintiff at the time the defendants blew it up, but had not proceeded to the extent supposed in the previous instruction, then such injury is to be deducted from the value, and the defendants are only liable for the difference. If the furniture remaining in the house at the time it was blown up was uninjured by fire, as was admitted by the defendants, then the plaintiff is entitled to recover its full value, without regard to any peril to which it was exposed.

The jury returned a verdict for the plaintiff, assessing damages for injury to both house and furniture; and the defendants alleged exceptions.

*P. W. Chandler & B. H. Smith* for the defendants. Pettingell had authority to act alone, if no other firewards or other officer were within such distance as to afford opportunity to consult with them. Gen. Sts. *c.* 24, § 4. *Frankfort* v. *County Commissioners,* 40 Maine, 389. *Varick* v. *Briggs,* 6 Paige, 330. *The Generous,* 2 Dods. 322. *Stradling* v. *Morgan,* Plowd. 205. *Reniger* v. *Fogossa,* Ib. 13. *New River Co.* v. *Graves,* 2 Vern. 431. And if the plaintiff's house was materially on fire, and certain to be destroyed, this fireward, acting officially, had the right to destroy it if in his judgment this was necessary to prevent the further spreading of the fire. *Taylor* v. *Plymouth,* 8 Met. 462. *Pentz* v. *Ætna Ins. Co.* 9 Paige, 568. *Mayor, &c. of New York* v. *Lord,* 17 Wend. 296. The same rule applies to the goods. If the defendants are liable, it is only for so much as might otherwise have been saved. Gen. Sts. *c.* 24, § 5 *Mayor, &c. of New York* v. *Lord,* 17 Wend. 296 ; *S. C.* 18 Wend. 135. *Stone* v. *Mayor, &c. of New York,* 25 Wend. 161.

*S. B. Ives, Jr.,* for the plaintiff. This action is for a trespass to real estate. The ground of defence is, that the defendant Pettingell, by virtue of his office as a fireward, had a right to destroy the plaintiff's property. There is no question in this case as to the right at common law of any citizen to destroy a building, in case of necessity. That right may well be

conceded. The Gen. Sts. *c.* 24, §§ 4, 5, do not give to one fireward any authority to destroy buildings, beyond what is vested by law in every citizen. *Ruggles* v. *Nantucket*, 11 Cush. 433, and cases cited.

The question as to damages is, what is the proper rule applicable to trespassers? Can they set up that if they had not destroyed the property, somebody else, or the elements, would have destroyed it? Trespassers, who have taken from a party the control of his property under circumstances like the present, cannot compel him to undertake to say what part of it he might otherwise have saved. He was entitled to every possible chance of saving his property. If nothing short of an almost miraculous interposition could have saved it from destruction, he was entitled to his chance of even that. In a suit against a town, upon their statute liability, it is held that no danger, however imminent, can be material. *Taylor* v. *Plymouth*, 8 Met. 462. Shall trespassers have a more lenient rule? The instructions asked for present an issue which it is impossible to try. Who can measure the speed of the approaching conflagration, or tell how many of the plaintiff's friends would have lent him their aid? Who can determine whether this mirror or that carpet would have been saved?

HOAR, J. A fireward is an officer who derives all his powers from the statute; and when the statute empowers three firewards to do certain acts upon their joint responsibility, acting together, it neither expressly nor by implication gives any such authority to one of them, acting alone. *Ruggles* v. *Nantucket*, 11 Cush. 433. In that case the court say that " the plain intent of the statute is, that no house or building shall be demolished, unless it shall be judged necessary by three firewards, or by the other officers authorized to act in their absence, or where no firewards have been appointed. . . . . . It is a joint authority expressly given to the officers designated, acting together, and cannot be exercised by a minority, or by any one of them."

The defendants seek to remove their case from the operation of this principle by showing that it was impossible to procure the concurrent action of three firewards, they being separated

by the fire; and contend that as the necessity for the destruc-
tion of the house was immediate and pressing, the one who
was in a position to act must be regarded as entitled to act
alone. But as one fireward is not intrusted by law with any
peculiar authority over the subject, he would in such a case be
no more than any other citizen; and the necessity would apply
as well to the acts of any other person present as to his.

We think, therefore, that the ruling of the court was right,
that "inasmuch as the act of the defendants in blowing up the
plaintiff's house was without his consent, and not directed by
any three firewards or by any of the other persons named in
Gen. Sts. *c.* 24, § 5, it was wrongful, and the plaintiff is entitled
to such damages as he had sustained therefrom." It is objected
that this instruction did not leave open to the jury the question
whether the destruction of the house was necessary for the
public safety, which the defendants had a right to prove, and
which would have furnished a justification. *Malwerer* v.
*Spinke*, Dyer, 36. *Mouse's case*, 12 Co. 63. *Saltpetre case*,
12 Co. 13. *Taylor* v. *Plymouth*, 8 Met. 462. But we must in-
terpret the instruction given by the subject to which it was ap-
plied by the judge who gave it. And we think it is obvious
that it only referred to the official authority under the statute
upon which the defendants relied, and upon which they had
asked for instructions which were refused. It does not appear
from the bill of exceptions that any ruling was asked upon the
common law right to pull down a building in case of necessity,
or that the point was presented by the defendants to the court
or jury. The extent and limitations of that right are not be-
fore us for discussion or decision.

But we are of opinion that the rule of damages was errone-
ously stated, and that upon this point the exceptions must be
sustained. The jury were instructed that the fact that the
house and furniture in it were in imminent peril of destruction
by fire would not diminish the damages to which the plaintiff
was entitled. This instruction was afterward qualified in its
application to the building, by stating that if it was so far on
fire at the time it was blown up as to make its destruction

inevitable, it might be considered as already destroyed, and the defendants would not be answerable; and that if it was partially burned, but not to such an extent, the amount of injury which it had received should be deducted from its value. But it was still held that unless the house or furniture was actually on fire at the time nothing was to be deducted from their full value on account of any peril to which they were exposed. This ruling would include the case of a building or furniture so surrounded by fire as to make their preservation, or even access to them for more than a moment, impossible, while they were yet not actually burning. The defendants asked that the jury should be instructed that they were " liable for the destruction of such personal property of the plaintiff, if any, as might have been saved if they had not interfered, and for no more." This was in substance the true rule. As the defendants were wrong-doers, it was necessary that such facts should appear as would limit their full responsibility. But such facts might be shown. It is obvious that in the midst of an extensive conflagration property might be so situated in relation to the fire, although not actually burning, as to materially affect its value. The plaintiff had a right to the chance of saving his property of which the act of the defendants deprived him. But that chance might be so small as to be of scarcely appreciable worth.

We think the jury should have been permitted to consider whether there was any possibility of saving the property destroyed, although it was not proved to have been on fire; and that they should not have assessed more than nominal damages for that which could not have been saved.

*Exceptions sustained*